[Civ. No. 7159. Fourth Dist. May 24, 1965.]

MARY ANN GAASCH SPENCER, as Administratrix, etc.,
Plaintiff and Respondent, v. HARMON ENTERPRISES,
INC., et al., Defendants and Appellants.

Chapman & Sprague, Roy E. Chapman and Max Tendler for Defendants and Appellants.

James A. Starritt and Guy T. Graves for Plaintiff and Respondent.

CONLEY, J.*—This is an appeal by Harmon Enterprises, Inc. (hereinafter called Harmon) and its guiding spirit, Herbert Rose, from a judgment in favor of the heirs of Michael O'Toole acting through the administratrix of his estate, which

---

*Assigned by the Chairman of the Judicial Council.

restored to them a parcel of land in San Bernardino County, together with damages and costs. The judgment quieted title to the east half of the property described in respondent's complaint; but provided that Eva M. Ward and Alma Asmussen (not parties to this appeal) were bona fide purchasers for value without notice of the west half of the quarter section, and that, consequently, they may retain title to that portion of the real estate; however, appellants were directed either to reacquire and deed the latter real property to the respondent, or, in the alternative, to pay her the sum of $22,000 as damages for its loss. The court also vacated and set aside (except as to the interests of Eva M. Ward and Alma Asmussen) a prior judgment of the Superior Court of San Bernardino County (numbered 86086 therein), which had purported to quiet the alleged title of Harmon to the subject property. The judgment and findings also determined that appellants not only had obtained ostensible title by extrinsic fraud, but had slandered respondent's title to the subject property, and that, as a result, respondent suffered additional and special damages in the amount of $5,450 as reasonable attorneys' fees incurred in the instant action. The court characterized the acts of appellants as fraudulent, malicious and oppressive, and judgment was, consequently, ordered in favor of plaintiff for an additional $5,000 as punitive damages. Costs of suit were also awarded to respondent, but it is claimed that, by inadvertence or otherwise, the respondent failed to file a second exemplar of her cost bill after the judgment was modified in connection with appellants' motion for a new trial.

At the beginning, it is advisable to note carefully the exact scope of the notice of appeal: "This appeal is taken from the portions of said judgment appearing on pages 3 and 4 of the judgment and more particularly designated in said judgment as sub-paragraphs 4, 5, 7, 8, and 9." Subparagraphs 4 and 5 award reasonable attorneys' fees in the sum of $5,450 to plaintiff as against the defendants, Herbert Rose and Harmon, because they ". . . slandered and disparaged the title of plaintiff to said real property"; subparagraph 7 provides for the payment of $5,000 as exemplary damages; subparagraph 8 awards costs of suit to the plaintiff and subparagraph 9, which incidentally is not discussed in any way in the briefs, the point being presumably waived, is as follows: "This judgment shall bear interest at the rate provided by law from the date of its actual rendition and entry but otherwise shall be deemed to have been rendered and entered nunc pro tunc as of the 16th day of June, 1961."

The notice of appeal is therefore notable, not only for what is specifically included, but for what is excluded. The appellants do not here question the impact of subparagraph 1 of the judgment, which holds that plaintiff is the owner in fee simple and entitled to the possession of the east half of the northeast quarter of section 32, township 11 north, range 4 west, San Bernardino Base and Meridian, or the determination that the appellants have no right in or to that land, or that the west half of the quarter section now belongs to Eva M. Ward and Alma Asmussen as bona fide purchasers for value without notice; neither do the appellants quarrel with the portion of the holding which sets aside the earlier judgment in favor of Harmon in case No. 86086. The effect of these inferential concessions is the implied admission that the trial court had before it substantial evidence from which it found that the respondent had been threatened with the deprivation of title through the fraudulent attempt of the appellants to acquire the land, and, furthermore, that the portion of the judgment which requires the return of the west half of the quarter section to the plaintiff or the payment of $22,000 in damages in lieu thereof is unimpeachable.

Michael O'Toole died on the 28th day of March, 1944; he was then the owner of the northeasterly quarter of section 32, township 11 north, range 4 west, San Bernardino Base and Meridian. Taxes on his property were delinquent, starting with the fiscal year 1940, and continuing each succeeding year through the fiscal year 1948; and the property had been deeded to the State of California as a result of the nonpayment of taxes. The land was then redeemed by one of the O'Toole relatives, Mrs. William Bradkey, on April 22, 1949.

Several of his heirs, including Mrs. Bradkey, Joseph O'Toole, Helen Cramer and Mary Ann Gaasch Spencer, were aware of the death of Michael O'Toole, of his ownership of the land, and that the taxes on it were delinquent. At the time Mrs. Bradkey redeemed the property in 1949, some of the heirs besides herself, contributed to the payment of the past due taxes.

In 1954, one of the defendants, Diana Randolph, ferreted out the fact that taxes again became delinquent on the property for 1949 and subsequent years; during her investigation, she learned that Michael O'Toole was deceased; she ascertained the address of Mr. Joseph O'Toole from whom she requested a quitclaim deed; he refused to give her such an instrument. Thereupon, Diana Randolph paid the current year's taxes and

an installment on the delinquent taxes under the five-year-pay plan; she later assigned whatever interest she had acquired by the payment of taxes to Harmon with the understanding that when it cleared the title through contemplated proceedings, it would share with her the ownership of the property.

On December 9, 1955, Attorney Michael Motta, filed a petition for the appointment of P. A. Powell, as administrator of the estate of Michael O'Toole, deceased, in Los Angeles County (Probate No. 372354); Powell was then an employee of the appellant Rose, and Attorney Motta had been retained by Rose to represent Powell. In the petition for appointment, it was alleged that Harmon ". . . claims an interest in the aforesaid real property, and has filed a quiet title action in order to remove the claim of the Estate of Michael D. O'Toole in and to said real property" and that ". . . as far as known to your petitioner there are no heirs." Powell succeeded in obtaining an order appointing himself as administrator and he qualified as such on January 19, 1956.

On March 22, 1956, Diana Randolph wrote to Mrs. William Bradkey, sister of Michael O'Toole, stating, "About a year ago I took over the desert land of your late brother, Michael O'Toole for the taxes," and asking for a deed which was not given to her. The record shows that Diana Randolph did not redeem the property by the payment of taxes until April 11, 1956.

On July 23, 1956, Harmon, acting through attorney Leon Gordon, filed a complaint in San Bernardino County to quiet title to the subject property, naming P. A. Powell, as administrator of the estate of Michael O'Toole, deceased, as one of the defendants. The pleading was a short form quiet title complaint containing the averment that Harmon was the owner of four described parcels of real property, including the subject property, which was therein designated as parcel three. It further alleged that Powell, as administrator, and the other defendants ". . . claim an interest in said real property adverse to the Plaintiff and that the claims of said Defendants are without any right whatsoever, and that said Defendants have not nor has any one of them any right, title or interest whatever in said land." No heir of Michael O'Toole was named as a party defendant. After apparent regular service upon him, Powell, as administrator, defaulted; the default was duly entered of record, and judgment quieting Harmon's alleged title to the property as against the estate of Michael O'Toole was filed on October 16, 1956; the judgment was then recorded in the office of the County Recorder of San Bernardino County

on October 25, 1956. Leon Gordon, the attorney of record for Harmon, appeared for it at the default hearing; the ''evidence'' presented by him consisted of the quitclaim deed from Diana Randolph to Harmon as to which he made the oral statement that the instrument covered parcel three; the deed, however, was never actually received in evidence, but was returned by the trial judge to Attorney Gordon with a statement, ''You will have to record the deed. Take judgment as to Parcels 3 and 4.''

On October 31, 1956, Security Title Insurance Company issued a policy of title insurance to Harmon with a value of $1,000.

More than a year later, on January 21, 1958, two deeds and a deed of trust, covering the west half of the property, were recorded in San Bernardino County by Land Title Company of San Bernardino. One of the deeds, dated December 27, 1957, was from appellant Harmon to Randolph Properties, Inc. That organization deeded to Eva M. Ward and Alma Asmussen and others whose rights were later acquired by the two women.

The heirs of Michael O'Toole, including Mrs. William Bradkey, Joseph O'Toole, Helen Cramer, and Mary Ann Gaasch Spencer, knew that taxes on the property were again delinquent starting with 1949, and also knew that Diana Randolph claimed an interest in the land by reason of the payment of taxes by her. Joseph O'Toole and Mrs. William Bradkey had refused to give quitclaim deeds to Diana Randolph. The record is silent as to whether they took preliminary steps to initiate the probate of Michael O'Toole's estate until one Leonard Shewfelt, a real estate speculator, entered into a contract in writing with the 16 heirs of Michael O'Toole through an escrow arrangement dated January 15, 1958, at the Wilshire Escrow Company, in which the heirs agreed to deed their respective interests to Mr. Shewfelt to enable him to attempt to clear the title; it was stipulated in the agreements that if he failed they would pay him nothing, but if successful, he would be entitled to one-half of the value of the property recovered.

On February 3, 1958, Mr. Shewfelt, representing the heirs of Michael O'Toole, filed a petition in the O'Toole estate to suspend Powell as administrator; sometime afterwards, Powell filed a report and a request for exoneration of his bond and tendered his resignation. The resignation was accepted and the bond exonerated, and Mrs. Spencer, plaintiff-respondent here-

in, was then named administratrix of the estate by the Los Angeles Superior Court.

The appellant Rose, whose business, he says, is land speculation dealing principally in tax delinquent lands, was the president and managing officer of Harmon. Between 1954 and 1957, Rose and his employee, Powell, petitioned for letters of administration in the estates of several decedents, besides Michael O'Toole; actually, the record shows that there were six different estates in which the same course was adopted by Rose and Harmon. Each petition for letters was filed under the supervision of an attorney employed by Rose; these attorneys included Leon L. Gordon. The petitions all contained substantially the same allegations, including an averment that Harmon claimed an interest in the estate property, which it had filed a quiet title action to establish; in most of the cases, it was alleged that so far as known to the petitioner there were no estate heirs. Each of the petitions stated that the estate had no real interest in the property involved. The appellant Rose, as managing officer for Harmon, also caused quiet title actions to be filed in the Superior Courts of Los Angeles and San Bernardino Counties with appellant Harmon as plaintiff and numerous individuals and corporations as defendants including the administrators who were employees of appellants. Each of these quiet title actions was filed and carried on by an attorney selected and compensated by Harmon.

When the appellants and Diana Randolph learned that Leonard Shewfelt was asserting a claim to the subject property on behalf of Michael O'Toole's heirs, and before the filing of the instant action, they offered to restore the property to the respondent, but she rejected the offer and instead demanded the additional payment of $25,000 as damages. Prior to the hearing, a similar offer was made by the defendants to restore the property to plaintiff, and such offer was repeated during the trial itself, but all proposals were rejected in the absence of a willingness on the part of Rose and Harmon to pay money damages also.

The first point made by appellants in their attack upon the finding that there was slander of title is that the instant case was prematurely brought, because, as appellants contend, it appears in the record, that there was not then a final judgment in the case brought by Harmon against Rose's agent, Powell, as administrator of the estate of Michael O'Toole. But it appears that the judgment in the prior action was actually final through lapse of time and the failure of any party to appeal. (*Albertson* v. *Raboff*, 46 Cal.2d 375, 378 [295 P.2d 405].)

Next, it is claimed that the court had no right to award attorneys' fees in the pending action for two reasons: First, because the attorneys for plaintiff were actually hired by Mr. Shewfelt, rather than the plaintiff, and, secondly, because the special damages were not pleaded with particularity. It is clear from the record that the fees involved were those which the plaintiff incurred in connection with the rather lengthy trial of the present action. There was a proposed pleading in plaintiff's second amendment to the complaint as follows:

"XXII

"That in the prosecution of this action, to recover the assets of the Estate of Michael O'Toole, Deceased, and for damages and slander of title, said estate has become obligated to pay costs, expenses of trial, certified copies, depositions, investigations, travel expenses, secretarial service, witness fees, expenses of witnesses, attorney fees, and other miscellaneous expenses, proof of which will be made upon the trial of this cause."

And the prayer was thereby amended to ask for special damages as alleged and proved.

While the court denied respondent's motion to file this pleading as a whole, and respondent was in error in failing to comply with the order, the court nevertheless permitted an amendment of the complaint to claim attorneys' fees and we shall consider the filed document insofar as it does refer to attorneys' fees as a legitimate, though unusual, compliance with the court's order to that limited extent.

It is a well-known principle that when attorneys' fees are requested the court does not need separate evidence to establish the reasonable value of whatever should be justly awarded, the theory being that the trial judge is competent from his own knowledge of legal practice to fix the amount of the fees. (*Lewis & Queen* v. *S. Edmondson & Sons,* 113 Cal. App.2d 705, 708 [248 P.2d 973]; *Rosslow* v. *Janssen,* 136 Cal.App. 467, 470 [29 P.2d 287]; *City of Los Angeles* v. *Los Angeles-Inyo Farms Co.,* 134 Cal.App.2d 268, 274 [25 P.2d 224]; *Huber* v. *Shedoudy,* 180 Cal. 311, 314 [181 P. 63].)

The contracts between Mr. Shewfelt and the O'Toole heirs provided that the amount of the fees incurred in prosecuting any necessary court action should constitute a charge against the assets of the estate of Michael O'Toole, and they are, therefore, properly recoverable by the plaintiff as damages in the action. (*Wright* v. *Rogers,* 172 Cal.App.2d 349, 366

[342 P.2d 447]; *Contra Costa County Title Co.* v. *Waloff*, 184 Cal.App.2d 59, 67-68 [7 Cal.Rptr. 358].)

The appellants urge a number of purported reasons why they question the finding of slander of title which resulted in special damages consisting of attorneys' fees upon the trial of the current case. They point out the requisites for recovery of such damages as stated in Restatement of Torts, section 624, page 325, as follows: ''One who, without a privilege to do so, publishes matter which is untrue and disparaging to another's property in land, chattels or intangible things under such circumstances as would lead a reasonable man to foresee that the conduct of a third person as purchaser or lessee thereof might be determined thereby is liable for pecuniary loss resulting to the other from the impairment of vendibility thus caused.'' The appellants further stress that the burden of alleging and proving lack of privilege and the existence of malice falls upon the plaintiff. (*Gudger* v. *Manton*, 21 Cal.2d 537, 543 [134 P.2d 217] [disapproved on another point by *Albertson* v. *Raboff, supra,* 46 Cal.2d 375].) ■ Counsel for appellants also correctly alleges that there should normally be proof of falsehood, malice, and injury. (*Edwards* v. *Burris*, 60 Cal. 157, 161; *Burkett* v. *Griffith*, 90 Cal. 532, 537 [27 P. 527, 13 L.R.A. 707, 25 Am. St. Rep. 151]; *Southcott* v. *Pioneer Title Co.*, 203 Cal.App.2d 673, 676 [21 Cal.Rptr. 917].) ■ In normal circumstances, where a rival claimant of property prosecutes an action in good faith to prove his own title to the land, such claimant is conditionally privileged to disparage another's title to property providing it is done ''. . . by an honest and good faith assertion of an inconsistent legally protected interest in himself.'' (*Gudger* v. *Manton, supra,* 21 Cal.2d 537, 545.) However, the appellants themselves, in quoting the authorities on the subject, make it clear that good faith is an element essential to conditional privilege. (*Davis* v. *Wood*, 61 Cal.App.2d 788, 794-795 [143 P.2d 740]; *West Investment Co.* v. *Moorhead*, 120 Cal.App.2d 837, 842 [262 P.2d 322, 39 A.L.R.2d 833] [disapproved on another point by *Albertson* v. *Raboff, supra,* 46 Cal.2d 375].) And there can be no possible contention that the trial court did not find that the whole plan and the acts of the appellants were characterized throughout by a fraudulent attempt to secure title of the subject property by patently wrongful and illegal activity. It is not claimed that the appellants were guilty of any personal hatred or specific malice toward the actual heirs of Michael O'Toole; the malice which existed was implied malice, or malice at law, which arose through appellants'

attempt to secure to themselves property as to which they had no legitimate claim. The trial court made the following findings concerning the bad faith and fraud of the appellants:

"IX

"It is also true that:

" . . . . . . . . . . . . . . . . .

" . . . . . . . . . . . . . . . . .

"c. During the year 1954 or 1955, defendants Herbert Rose and Harmon Enterprises, Inc., a corporation, agreed between themselves, and each one with the other, to form and organize a combination and joint enterprise, the purpose of which was to maliciously and fraudulently acquire the real property described in the complaint without purchasing said property from said estate, and without notifying the heirs or next of kin of the said Michael O'Toole, deceased, and to obtain title to said property.

"d. Pursuant to said combination and joint enterprise, defendants Herbert Rose and Harmon Enterprises, Inc., a corporation, caused defendant P. A. Powell to file a Petition in the Superior Court of Los Angeles County, Probate No. 372354, in which, among other things, it was falsely and fraudulently alleged that Michael O'Toole, deceased, left no heirs or next of kin, that the estate of said decedent had no interest in said property, and that said Harmon Enterprises, Inc., had a claim or interest in said property, and that said Harmon Enterprises, Inc., a corporation, had a claim or interest in said property, when said defendants referred to in Sub-Paragraph c of this Paragraph IX, and said P. A. Powell, and each of them, knew: the names and addresses of numerous heirs and next of kin of said decedent; that the record title in fee simple absolute to said property stood in the name of Michael O'Toole, deceased; and that Harmon Enterprises, Inc., a corporation, had no right, title or interest in or claim to said property. Pursuant to said false Petition, Letters of Administration were issued to said P. A. Powell appointing said P. A. Powell as Administrator of the Estate of Michael O'Toole, deceased, in said proceeding without giving any notice of any kind or nature of the filing of said Petition or the hearing thereon to any of the heirs or next of kin of said Michael O'Toole, deceased.

"e. Further in pursuance of said agreement of combination and joint venture, defendant Harmon Enterprises, Inc., a corporation, as plaintiff, filed a complaint in action No. 86086

in the Superior Court of San Bernardino County to, among other things, quiet title to said land against said P. A. Powell as Administrator of the estate of Michael O'Toole, deceased, and caused services of Summons and Complaint to be made upon said P. A. Powell as said Administrator. No notice of said action was given to any heir or next of kin of said Michael O'Toole, deceased. Said defendant, Harmon Enterprises, Inc., a corporation, as plaintiff, among other things falsely alleged in the unverified complaint in said action that said Harmon Enterprises, Inc., a corporation, was the real and actual owner of said land, well knowing that it had no right, title or interest in or claim to said land, and further falsely alleged that the estate of Michael O'Toole, deceased, had no right, title or interest therein, well knowing that said estate of Michael O'Toole, deceased, was the sole and only owner of the title in fee simple absolute to said property and the holder thereof; said defendants caused said P. A. Powell as said Administrator to default and fail to answer or plead to said complaint, and said Harmon Enterprises, Inc., a corporation, caused the default of said Administrator to be entered in said cause. Pursuant to said agreement of combination and joint venture, Harmon Enterprises, Inc., a corporation, brought said cause No. 86086 on for trial as a default, and without notice to any heir or next of kin of said Michael O'Toole, deceased, and without introducing any evidence of any kind or nature in support of the allegations of said complaint, secured by means of false and misleading statements by its attorney of record to the judge of this court presiding at said trial, a judgment and decree purporting to quiet the title to said land in defendant Harmon Enterprises, Inc., a corporation, and against said P. A. Powell as Administrator of the estate of said Michael O'Toole, deceased, and the heirs and next of kin of said decedent. Immediately upon the entry of said purported decree, defendant Harmon Enterprises, Inc., by Grant Deed conveyed one-half of said land to defendant Randolph Properties, Inc., a corporation;

"f. In the foregoing proceedings in Los Angeles Superior Court No. 372354, and in San Bernardino Superior Court No. 86086, said defendants Herbert Rose and Harmon Enterprises, Inc., a corporation, and P. A. Powell and each of them were guilty of conduct amounting to extrinsic fraud against the plaintiff and her predecessors in interest;

" . . . . . . . . . . . . . . .

"h. Defendants Herbert Rose and Harmon Enterprises, Inc., a corporation, are responsible and to be held accountable

for all damages and other relief arising out of the fraud practiced by said combination and joint venture;

" . . . . . . . . . . . . .

"j. In their conduct heretofore described and referred to, defendants Herbert Rose and Harmon Enterprises, Inc., a corporation, have engaged in conduct and a course of conduct which is fraudulent and malicious and oppressive as to the plaintiff in this cause, and constitute a travesty upon Justice and an abuse of the process of the Courts of this state, and such conduct comes squarely within and is covered by provisions, scope and meaning of Section 3294 of the Civil Code, and the award of punitive and exemplary damages against said defendants in substantial amounts is proper."

■ It is thus apparent that from the very inception of the attempt on the part of appellants to get title to the property of others, they were guilty of all-pervasive fraud; in such circumstances, it was not necessary to prove malice other than that which inhered in the plan and wrongful activity of the conspirators. ■ That damage resulted from what they did is also clearly established. Not only did the plaintiff lose, temporarily at least, one-half of the land to bona fide purchasers for value through the slander of title committed by the appellants, but the O'Toole heirs were put to the cost of prosecuting the present action to reestablish their rights. The finding of the trial court relative to slander of title must be upheld.

■ Appellants argue that Diana Randolph had color of title by reason of the payment by her of past due taxes after the land was deeded to the state, and in support of this contention they cite Revenue and Taxation Code section 4101 for whatever support it may give them; that section presently reads as follows: "Tax-sold property and, if the right of redemption has not been terminated, tax-deeded property may be redeemed until the right of redemption is terminated."

The section does not purport to give any right in the land to a volunteer who pays delinquent taxes. However, the appellants place considerable argumentative weight on the supposed effect of the amendment of that section in 1955. Prior to that time the section read as follows: "Tax-sold property and, if the right of redemption has not been terminated, tax-deeded property may be redeemed *by the redemptioner* until the right of redemption is terminated. *The 'redemptioner' is the person whose estate has been sold or his successor in interest.*" (Italics added.)

The appellants assert that by this change the Legislature meant to give some kind of right to a volunteer who pays delinquent taxes to the state. However, it is a strange argument that would give to a volunteer *sub silentio* a right which only the former owner of the land, or his heirs, have always previously enjoyed.

■ The general rule is that a volunteer acquires no right whatsoever by the payment of taxes on the land of another. (*Huling* v. *Seccombe,* 88 Cal.App. 238, 242 [263 P. 362]; *Stanley* v. *Westover,* 93 Cal.App. 97, 109 [269 P. 468]; *In re Behymer,* 130 Cal.App. 200, 205-206 [19 P.2d 829]; *Secret Valley Land Co.* v. *Perry,* 187 Cal. 420, 425 [202 P. 449].)

■ It is next argued by appellants that, because the State of California held deeds on two occasions because of the prolonged failure of anyone to pay taxes, the plaintiff had no right in this suit to claim damages for slander of title during such periods when the state thus had title to the land. It is true that a deed to the state conveys absolute title to the property, subject only to the right of redemption. (*People* v. *Lucas,* 55 Cal.2d 564, 568 [11 Cal.Rptr. 745, 360 P.2d 321]; *People* v. *Maxfield,* 30 Cal.2d 485, 487-488 [183 P.2d 897].) But it is also true that upon the payment of the delinquent taxes the rights of the heirs revive in full strength. As is said in section 4112 of Revenue and Taxation Code: "On redemption, the deed becomes null and any interest acquired by virtue of the sale to the State ceases."

■ The appellants contend that the award of exemplary damages was not justified. Section 3294 of the Civil Code provides: "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

When fraud is involved, as it is here, the award of punitive damages is expressly authorized by the section of the Civil Code above quoted and by the following cases, among many others: *Roth* v. *Shell Oil Co.,* 185 Cal.App.2d 676, 683 [8 Cal.Rptr. 514]; *Wright* v. *Rogers, supra,* 172 Cal.App.2d 349; *Ward* v. *Taggart,* 51 Cal.2d 736, 743 [336 P.2d 534]; *Haigler* v. *Donnelly,* 18 Cal.2d 674, 680-682 [117 P.2d 331]; *Taylor* v. *Wright,* 69 Cal.App.2d 371, 384-386 [159 P.2d 980]; *Hartzell* v. *Myall,* 115 Cal.App.2d 670, 676-678 [252 P.2d 676]; *Foster* v. *Keating,* 120 Cal.App.2d 435, 454, 455 [261 P.2d 529]; *Devers* v. *Greenwood,* 139 Cal.App.2d 345, 350 [293

P.2d 834]; *Kennedy* v. *Byrum,* 201 Cal.App.2d 474, 482 [20 Cal.Rptr. 98]; *Southern California Disinfecting Co.* v. *Lomkin,* 183 Cal.App.2d 431, 451 [7 Cal.Rptr. 43].

Finally, the appellants contend that plaintiff is not entitled to costs of suit for the following reason: as heretofore mentioned, the court, in connection with the motion for a new trial, made certain changes in, and additions to, the findings and modified the judgment accordingly, all in compliance with the authorization contained in section 662 of the Code of Civil Procedure. Previous to that time and after the entry of the original judgment, that is to say, ". . . after the . . . decision of the court, and not later than ten (10) days after the entry of the judgment, . . ." (Code Civ. Proc., § 1033), the plaintiff filed a cost bill setting forth the items which she claimed. According to a statement in one of the briefs filed by respondent, which is not challenged by appellants, appellants made a motion to tax costs at that time and the court did in fact tax the costs at the total sum of $464.79; such amount was entered by the clerk in the space provided therefor in the judgment. The changes made in the findings and in the form of the judgment as above stated were engrossed in documents showing the modifications, but it is consonant with commonsense to hold, as we do, that this was the same judgment from the standpoint of costs and that therefore the clerk of the court owed a duty to fill in the space in the last draft with the amount of the costs that had been determined.

The trial court is directed to order that the clerk fill the appropriate blank in the final form of the judgment with the amount of costs, to-wit: $464.79. The judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied June 10, 1965, and appellants' petition for a hearing by the Supreme Court was denied July 21, 1965. Peters, J., was of the opinion that the petition should be granted.