[Civ. No. 9099. Fourth Dist., Div. Two. Mar. 6, 1969.]

GARY C. HORN, Plaintiff and Respondent, v. GUARANTY CHEVROLET MOTORS, Defendant and Appellant.

478

Getz, Aikens & Manning, Walter F. Bruder, Jr., and Joel A. Goldman for Defendant and Appellant.

Dannemeyer & Tuohey and Conrad G. Tuohey for Plaintiff and Respondent.

McCABE, P. J.—Action against car dealership for rescission, quasi-contractual recovery and exemplary damages predicated upon fraud.

On March 15, 1966, plaintiff Gary Horn, and his wife, Sharon visited defendant's place of business, a Chevrolet automobile dealership in Santa Ana, for the purpose of looking at and considering the purchase of an automobile. During the course of this visit, plaintiff observed a 1965 Chevrolet Impala which he eventually purchased from defendant. The car was shown in defendant's new car showroom and was represented by defendant as a "new" car. The car's odometer showed four miles.

Plaintiff visually inspected the Impala and engaged in a discussion with defendant's sales representative, Charles Tinch, respecting several irregularities which he noticed with regard to the automobile. Plaintiff also inquired as to why a 1965 model Chevrolet was in the new car showroom at a time when the 1966 models were available. According to plaintiff's testimony, Mr. Tinch stated to him that the seats had been stolen from the car while it was on the back lot and it had been necessary to wait for the insurance to go through before they could replace the seats and put the car back on the showroom floor. At trial, Mr. Tinch testified he volunteered the information to plaintiff that the Impala had been stolen and the seats and several other items had been taken from the vehicle.

The 1965 Chevrolet Impala purchased by the plaintiff had been stolen from defendant's new car lot during the night of September 3, 1965. The car thereafter was discovered by the police in a vacant garage on South Fairview, City of Santa Ana, a distance of approximately 2½ miles from defendant's place of business. On September 4, 1965, one of defendant's employees drove the car back to defendant's lot. The police report, with statements attached thereto, indicated the two front seats, the rear seat, knobs on the dashboard and the gear selection mechanism had been removed; the car door had been "jimmied" open with a screwdriver; the ignition wires were "yanked from under the ignition" and connected; and

the car driven through an orange grove to the vacant garage on South Fairview.

Plaintiff contracted to purchase the Impala from the defendant on March 16, 1966. The vehicle had a list price of $3,757.70 but was sold to plaintiff for the cash selling price of $2,989. Due to plaintiff's inability to obtain his own financing, a new contract of conditional sale was executed on April 19, 1966. This contract provided for a down payment in the form of the net value of the trade-in of plaintiff's 1965 Volkswagen, which amounted to $297.37 and required plaintiff to make 36 monthly installments.

The March 16 and April 19, 1966 signed contracts specifically stated the 1965 Impala was a new 1965 Chevrolet Impala.

Within one week after plaintiff took possession of the car, he noticed that it was performing poorly. He returned it to defendant's service department to have the deficiency corrected. The car ran well for a short time, then developed more trouble. Plaintiff estimated that at the minimum he had to return the car for repairs at least 10 or 12 times. This excessive need for repairs prompted plaintiff to investigate the matter with the Department of Motor Vehicles which developed the facts surrounding the theft of the vehicle. He went to the department several months after the misrepresentations were made. Thereafter, on October 28, 1966, plaintiff returned the Impala to defendant's place of business and commenced the present action. At the time the vehicle was returned to defendant, the odometer indicated that the car had been driven approximately 13,000 miles.

In addition to the down payment of $297.37, plaintiff paid on account of the purchase of the subject vehicle one payment in the sum of $164.19 and four monthly payments of $95.29 for a total amount of $842.72.

The jury returned a verdict in favor of plaintiff, resulting in a judgment for plaintiff and against defendant in the sum of $5,000 exemplary or punitive damages, and in the sum of $842.72 in rescission of the contract in question, together with costs and disbursements in the sum of $499.51. Defendant moved for a new trial and for judgment notwithstanding the verdict, both of which motions were denied.

Defendant appeals from the judgment and order denying its motion for judgment notwithstanding the verdict and complains of the insufficiency of the evidence as to fraud, objects to the award of exemplary damages, claims the court erred in

giving jury instructions on the issue of punitive damages and refusing other instructions proffered by defendant on such damages.

■ Defendant attacks the sufficiency of the evidence, but it is basic law that when a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of the appellate court begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support a finding of fact. (*Florez* v. *Groom Dev. Co.*, 53 Cal.2d 347, 354 [1 Cal. Rptr. 840, 348 P.2d 200] ; *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183] ; *Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists*, 227 Cal.App.2d 675, 696 [39 Cal.Rptr. 64] ; 3 Witkin, Cal. Procedure (1954) § 84, pp. 2245-2246.) ■ When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trier of fact. (*Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.*, 66 Cal.2d 782, 784-785 [59 Cal.Rptr. 141, 427 P.2d 805].) The same rule applies to fraud cases. (*Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412, 422 [159 P.2d 958].)

■ In the instant case either a concealment that the car had been stolen, driven through an orange grove and "stripped" by the thief or an affirmative misrepresentation that the Impala was "new" could constitute the necessary fraud. (See *Bell* v. *Graham*, 105 Cal.App.2d 765 [234 P.2d 158] ; *New & Used Auto Sales, Inc.* v. *Ahvakana* (9th Cir. 1959) 269 F.2d 189.) The evidence supports a finding of fraud upon any or all of these grounds. Defendant's argument that plaintiff failed to produce any objective evidence to show that the omission was of a material nature is belied by the police report.

Defendant's contention that plaintiff did not justifiably rely upon the misrepresentation is also without merit. ■ "An independent investigation or an examination of property does not preclude reliance on representations where the falsity of the statement is not apparent from an inspection, or the person making the representation has a superior knowledge, or the party relying thereon is not competent to judge the facts without expert assistance." (*Bagdasarian* v. *Gragnon*, 31 Cal.2d 744, 748 [192 P.2d 935] ; accord *Hobart* v. *Hobart Estate Co.*, *supra*, 26 Cal.2d 412, 435.) ■ Moreover the issue of reliance is no less a question of fact than the question whether there were misrepresentations of material facts, so

the jury's resolution of conflicting evidence upon this point is equally conclusive upon this reviewing court as are the findings that misrepresentations were made by defendant. (*Radinsky* v. *T. W. Thomas, Inc.,* 264 Cal.App.2d 75, 80 [70 Cal.Rptr. 150]; *Vogelsang* v. *Wolpert,* 227 Cal.App.2d 102, 109 [38 Cal.Rptr. 440].)

 An intent to conceal the true condition of the automobile may be inferred from the salesman's representation that only the seats had been stolen from the automobile and from the fact that the odometer registered four miles after the vehicle had been driven in excess of four miles. It was a logical inference that the salesman's concealment and his actual misrepresentations, as testified to by plaintiff, were activated by a purpose to deceive the plaintiff. Since intent to deceive is usually proved by inference, rather than by direct evidence, the finding that deceit was intended is sufficiently supported.

While the actual damage suffered by plaintiff is not susceptible of exact computation, it is manifest that plaintiff suffered some damage. He contracted for a new car in new car condition but received a car that had been stolen, "stripped," and driven through an orange grove, and which was in poor operating condition.

 Defendant next contends that the amount awarded for rescission of the contract was excessive inasmuch as no allowance or deduction for the rental value of the automobile was allowed for the seven-month period plaintiff had the automobile and compiled the 13,000 miles registered on the odometer.

Specifically, defendant relies upon the following provision of section 1692, Civil Code: "If in an action or proceeding a party seeks relief based upon rescission, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties."

There were various estimates by defendant's witnesses concerning the rental value of a new Chevrolet. It was admitted, however, that rental value included profits to the lessor. Inasmuch as there was sufficient evidence for the jury to conclude that plaintiff had been the victim of a deceit and since plaintiff did not get the use of a new car in new car condition, it was not error to fail to offset rental value against the amount returned to plaintiff.

 In addition to returning $842.72 to plaintiff, the

jury awarded $5,000 punitive damages against defendant. Defendant contends that such damages are not recoverable as a matter of law in an action for rescission based upon fraud; that there is no evidentiary support for this punitive award; and that in any event the amount is excessive as a matter of law.

Defendant asserts that since plaintiff elected to rescind the transaction, rather than affirm it and sue for damages, plaintiff may not have exemplary or punitive damages. With respect to punitive damages, Civil Code, section 3294, provides: "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." The words "oppression, fraud, or malice," are in the *disjunctive* and any of them may be "express or implied." Fraud alone is an adequate ground for awarding punitive damages (*Spencer* v. *Harmon Enterprises, Inc.*. 234 Cal.App. 2d 614, 626 [44 Cal.Rptr. 683]; *Bate* v. *Marsteller,* 232 Cal. App.2d 605, 620 [43 Cal.Rptr. 149]), and it is immaterial that plaintiff's recovery is in the form of specific restitution, rather than monetary damages. (*Millar* v. *James,* 254 Cal. App.2d 530, 533 [62 Cal.Rptr. 335]; *Topanga Corp.* v. *Gentile,* 249 Cal.App.2d 681, 691 [58 Cal.Rptr. 713].)

 "The reviewing court's power to declare an award of damages excessive exists only when from the facts the amount appears at first blush to suggest passion or prejudice on the part of the jury. There is no distinction when the review is of an award of exemplary rather than actual damages . . . it is the province of the jury, and the trial court on the motion for a new trial, to say whether punitive damages should be awarded. The presumptions are in favor of the correctness of the verdict and judgment. After an award has been approved by the trial court the reviewing court will hesitate to declare the amount excessive unless upon consideration of the entire record including the evidence it must be said that the award was the result of passion or prejudice." (*Finney* v. *Lockhart,* 35 Cal.2d 161, 164 [217 P.2d 19].)

 An important factor in determining the propriety of an award for punitive damages is the wealth of the tortfeasor. Here the net worth of defendant corporation at the time of trial was shown to be $503,585.77. Upon a perusal of the

entire record, the award of $5,000 cannot be found by this court to be excessive.

Defendant finally contends the trial court erred in refusing to give his instructions that "Exemplary or punitive damages are not recoverable without first establishing actual damages" and that "Exemplary or punitive damages must bear a reasonable proportion or relation to actual damages." While the first requested instruction correctly states the law, the failure to give such instruction did not prejudice defendant for the jury was instructed that before it could find a rescission for fraud, plaintiff must prove that he suffered damages. The failure to give the second requested instruction was likewise not error inasmuch as the court instructed the jury with BAJI 172-A (New), the last sentence of which reads: "The law provides no fixed standard as to the amount of such punitive damages, but leaves the amount to the jury's sound discretion, exercised without passion or prejudice."

Judgment affirmed.

Kerrigan, J., and Tamura, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 30, 1969.