[Civ. No. 15046. Fourth Dist., Div. Two. May 18, 1976.]

L. E. WEISENBURG, JR., Plaintiff and Respondent, v.
MARIA ELENA H. MOLINA et al., Defendants and Appellants.

COUNSEL

Ward & Martin and Albert K. Martin for Defendants and Appellants.

Meis & O'Donnell, Fred G. Meis and Robert H. Scribner for Plaintiff and Respondent.

OPINION

FOGG, J.*—This is an appeal from a jury's award of both compensatory and punitive damages for abuse of process.

All three defendants, Maria Elena H. Molina (hereinafter referred to as Molina), Robert K. Yeaton (hereinafter referred to as Yeaton), and Maria Guadalupe Stevens (hereinafter referred to as Stevens) appeal from a judgment rendered after the jury returned the following verdicts: (a) a general verdict in favor of Stevens; (b) a general verdict in favor of plaintiff L. E. Weisenburg, Jr. (hereinafter referred to as Weisenburg) and against Molina and Yeaton for compensatory damages in the amount of $625.40, punitive damages against Yeaton in the amount of $25,000 and punitive damages against Molina in the sum of $3,240.18; (c) a special verdict finding the Orange County judgment entered on April 24, 1970 was not "caused to be entered by the false representation of defendants, or any of them"; (d) a special verdict finding that said judgment of April 24, 1970, was "an abuse of process by defendants, or any of them."

The events or facts leading up to this appeal are as follows: On October 19, 1963, Stevens executed a power of attorney in favor of Molina which was recorded in the office of the County Recorder of San Luis Obispo County. Some two years later Molina, acting for Stevens under her power of attorney, deeded real property located in San Luis Obispo County to Yeaton and in return, Yeaton and his wife gave Stevens two notes in the amounts of $13,750 and $5,000. Two deeds of trust secured by property located in San Luis Obispo County were also given to Stevens as security for these notes.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

During the month of June 1964, Weisenburg loaned Yeaton the sum of $20,000, which loan was evidenced by a promissory note to be repaid with interest at 6 percent to Weisenburg's business associate and nephew, William Y. Foster. When Yeaton failed to repay the note on the date agreed, after several demands for payment, Weisenburg filed suit in Sonoma County Superior Court on September 29, 1965. On November 17, 1967, said superior court rendered judgment for Weisenburg and against Yeaton in the principal sum of $20,000 plus interest and attorney's fees for a total of $28,700. After obtaining this judgment, Weisenburg levied a writ of execution against certain real property owned by Yeaton in San Luis Obispo, California on November 24, 1967. On November 30, 1967, Yeaton filed a petition in bankruptcy which was denied after Weisenburg opposed Yeaton's discharge. Beginning in January 1970, Weisenburg began to levy execution against Yeaton's salary as a teacher employed by the Ocean View School District in Orange County. As a result of his levy on Yeaton's earnings, Weisenburg collected the following amounts in 1970: January, $321.75; February, $343.02; March, $345.58; April, $24.63; May, $47.60; and June, $16.91.

Yeaton had filed a claim of exemption in the Sonoma County Superior Court which was denied by that court on March 12, 1970. Yeaton received a copy of this court order on April 3, 1970. On April 7, 1970, Yeaton prepared and filed an action entitled Molina v. Yeaton, No. 173-997, in the Superior Court of Orange County wherein Molina sued him, under her power of attorney, for an amount in excess of $25,000 due on the two notes previously executed by Yeaton in favor of Stevens in the amounts of $13,750 and $5,000. Yeaton then prepared and signed a stipulation for entry of judgment, pursuant to which the Orange County Superior Court entered a judgment against Yeaton and in favor of Molina in the sum of $25,900 on April 24, 1970. A writ of execution was obtained on the Molina judgment and levied upon Yeaton's salary from the Orange County Board of Education during the months of April, May and June 1970, thereby obtaining a total of about $1,100.

On July 7, 1970, Weisenburg filed the complaint which is the subject of this action to set aside a false and fraudulent judgment and for actual and punitive damages against defendants Molina, Yeaton and Stevens, alleging in substance that these defendants conspired to and did hinder and defraud Weisenburg in his collection upon the Sonoma County judgment by filing a false and fraudulent complaint whereby Molina obtained judgment against Yeaton. Answers to said complaint were filed

by Molina and Yeaton. On March 9, 1972, Weisenburg filed an amendment to his complaint to add a second cause of action for abuse of process, alleging in substance that the defendants in obtaining the Molina judgment against Yeaton conspired to and did abuse the powers of the court in obtaining said judgment in order to defeat Weisenburg's attempts to satisfy his judgment.

The testimony was that Stevens was Mrs. Yeaton's aunt, and that she lived in Mexico. Molina was the sister of Mrs. Yeaton, and she resided with the Yeatons. She and her children were partially dependent upon Yeaton for their support. At trial Molina testified, by way of deposition, that the monies which were obtained from the execution on Yeaton's earnings were deposited in Yeaton's checking account. Yeaton testified that the indebtedness which gave rise to the action against him by Molina arose from the sale by Stevens to Yeaton of certain lots in Monterey Heights, San Luis Obispo. A real estate appraiser called by Weisenburg testified that these lots had only a nominal value of $100 per lot because they lacked any existing access. Also, these lots were subject to a deed of trust in favor of Arroyo Builder's Supply in the amount of $6,684.95 for an indebtedness incurred by Yeaton.

After the jury returned the verdicts as previously stated, counsel requested the trial judge for clarification of the special verdicts. In response to this request, the trial judge stated that "they [the jury] find that there was no false representation of the defendants as between the defendants, but an abuse of process was in that actually in the conspiracy of the defendants of combining together and entering a false and fraudulent judgment. There were no false representations in the sense of either defendant making any false representation to the other or to the plaintiff because they didn't; but they did abuse the process of the court by conspiring together to have a false and fraudulent judgment entered. That's the way I think they analyzed it." In addition, he ordered the judgment of April 24, 1970, nullified on the basis that it was null and void.

Motions were made on behalf of all three defendants for a new trial, for judgment notwithstanding the verdict, and to vacate the judgment and enter a different judgment. On the date set for the hearing of these post-trial motions and prior thereto, a notice of appeal was filed by all defendants. The judge held that the filing of the notice of appeal prior to the hearing of the post-trial motions deprived the superior court of jurisdiction and ordered said motions off calendar.

The principal contentions made in this appeal by defendants and appellants are: (1) The trial court erred in declining to hear any of appellants' post-trial motions upon the ground of lack of jurisdiction; (2) the special verdicts finding that the Orange County judgment (a) was not caused to be entered by the false representation of any defendant, and (b) was an abuse of process, are inconsistent with the general verdicts in favor of Weisenburg and Stevens; (3) the evidence is insufficient to support a verdict for abuse of process; and (4) the punitive damages awarded are excessive.

I

Initially, appellants contend that the trial court erred in ruling that the prior filing of the notice of appeal divested it of jurisdiction to hear their motions to vacate the judgment and enter a different judgment, for a new trial, and for judgment notwithstanding the verdict. Section 916, subdivision (a) of the Code of Civil Procedure provides, in pertinent part, as follows: ". . . the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order." The general rule is stated by Mr. Witkin in volume 6 of California Procedure (2d ed. 1971) at page 4021: "Generally speaking, the taking or 'perfecting' of an appeal (by filing notice of appeal; see infra, § 331), deprives the trial court of jurisdiction of the cause. It may not vacate or amend a judgment or order valid on its face, nor do any other act which would affect the rights of the parties or the condition of the subject matter. [Citations.]"

In interpreting section 916, the court held in *Olson* v. *Superior Court,* 274 Cal.App.2d 311 at page 314 [79 Cal.Rptr. 136]: "The filing of an appeal from a judgment divests the trial court of all jurisdiction in matters embraced in the judgment or affected thereby. (Code Civ. Proc., § 916.) The appeal 'vests jurisdiction in the appellate court and terminates the jurisdiction of the lower court.' (*Estate of Hanley* (1943) 23 Cal.2d 120, 123 [142 P.2d 423, 149 A.L.R. 1250].)"

In support of their contention, appellants cite *Neff* v. *Ernst,* 48 Cal.2d 628 [311 P.2d 849], and *Estate of Waters,* 181 Cal. 584 [185 P. 951], which hold that a motion for a new trial is a matter collateral to the judgment and therefore the trial court retains jurisdiction to hear and determine a motion for new trial after an appeal has been taken from the judgment.

Respondent contends that the subsequent enactment of section 916, subdivision (a), divested the trial court of jurisdiction to hear the motions for new trial upon the filing of the notice of appeal. We do not agree, for the reason that the language of former section 946 of the Code of Civil Procedure, from which section 916 was derived, contains basically the same language. We decide, therefore, that these decisions are still the law in this state and that the judge erred in his determination that he had lost jurisdiction to hear appellants' motions for a new trial. Under section 660 of the Code of Civil Procedure, the judge's failure to rule on such motion within 60 days from the notice of entry of judgment operated as a denial thereof. However, it has been held that denial by operation by law of a motion for new trial is reviewable on appeal from the judgment. (*Free* v. *Furr*, 140 Cal.App.2d 378, 386 [295 P.2d 134].) Consequently, we have reviewed appellants' motions for a new trial and note that they were made upon the grounds of irregularity in the proceedings of counsel for Weisenburg (his alleged misconduct in closing argument to the jury), excessive punitive damages, and that the verdict is against law. All of such grounds were incorporated in appellants' contentions on appeal except the one dealing with the alleged misconduct of counsel for Weisenburg in his closing argument to this jury. Therefore, in our subsequent discussion of the issues raised by this appeal we have given full consideration only to those errors alleged by appellants. We have concluded, then, that no prejudice resulted to appellants from the trial court's erroneous ruling that it had no jurisdiction to hear the motions for new trial.

■ We have been cited to no authority by appellants, however, to dispute the trial court's determination that the filing of the notice of appeal divested it of jurisdiction to hear the remaining motions for judgment notwithstanding the verdict and to vacate the judgment and enter a different judgment. Clearly these latter motions directly concerned "matters embraced" in or "affected" by the judgment appealed from, within the meaning of section 916; and the trial court properly ruled it was without jurisdiction to hear these motions. Consequently, we find no merit in this contention.

## II and III

■ In considering the issue raised by appellants as to the alleged conflict of the special verdicts with the general verdicts in the case at bench, we are cognizant of the requirement of section 625 of the Code of Civil Procedure that if inconsistent, special findings *control a general*

verdict.[1] However, we are also mindful of the court-made rule or principle that a general verdict will be upheld unless absolutely irreconcilable with a special verdict. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 280, p. 3086; *Law v. Northern Assurance Co.,* 165 Cal. 394 [132 P. 590]; *Lowen v. Finnila,* 15 Cal.2d 502 [102 P.2d 520]; *Bate v. Marsteller,* 232 Cal.App.2d 605 [43 Cal.Rptr. 149]; *Koskela v. Albion Lumber Co.,* 25 Cal.App. 12 [142 P. 851].) This governing principle is stated in the leading case of *Law v. Northern Assurance Co., supra,* at page 406, quoting 38 Cyc. 1928: " 'No presumption will be indulged in favor of answers of the jury to special interrogatories as against the general verdict; but, on the contrary, every reasonable intendment in favor of the general verdict should be indulged, and all parts of the verdict are to be reconciled in support thereof if it can reasonably be done. Hence, the general verdict will stand unless the facts found by the jury in answer to special interrogatories are so clearly antagonistic to it as to be absolutely irreconcilable, the conflict being such as to be beyond the possibility of being removed by any evidence admissible under the issues, so that both the general verdict and special findings cannot stand.' " ■ *Law* also stated, at page 407 of the opinion, that the special test to be used in determining whether or not a special verdict is inconsistent with a general verdict is as follows: "A special finding is inconsistent with the general verdict only when, as a matter of law, the special finding when taken by itself would authorize a judgment different from that which the general verdict will permit." ■ Measured by this test, we find no inconsistency between the special verdict finding an abuse of process and the general verdict returned by this jury.

In the case at bench, when presented with a request for clarification of the special verdicts, the trial judge properly attempted to reconcile the two special verdicts with the general verdicts returned by the jury. He stated that the first special verdict was a finding by the jury that there was no false representation between the appellants nor by any of them to Weisenburg. We presume that the jury followed the instruction given to it in the following words: "To establish *actual* fraud in the obtaining of a judgment, it must be shown that a defendant: 1. Knowingly made a 2. False representation to the court 3. With the intent to deceive the court 4.

[1]Section 625 of the Code of Civil Procedure provides: "In all cases the court may direct the jury to find a special verdict in writing, upon all, or any of the issues, and in all cases may instruct them, if they render a general verdict, to find upon particular questions of fact, to be stated in writing, and may direct a written finding thereon. The special verdict or finding must be filed with the clerk and entered upon the minutes. Where a special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court must give judgment accordingly."

Which false representation thereby induced the court to rely thereon and enter judgment." That instruction obviously required the jury to find if any of the appellants made a false representation *to the court*. We, therefore, prefer to interpret the first special verdict as being a finding that no appellant made a false representation to the court in order to secure entry of the Orange County judgment in favor of Molina and against Yeaton. Weisenburg's counsel attempted to support the trial court's interpretation of the first special verdict upon the basis that the jury found the promissory notes were enforceable as between the appellants. However, the interpretation given to this special verdict really is not essential to a determination of this appeal since we have decided that the special verdict finding an abuse of process fully supports the general verdict rendered in this case.

The trial judge properly interpreted the second special verdict as a finding that there was an abuse of process in appellants' conspiring together to have a false judgment entered. Appellants argue that since there was no proof that the judgment was fraudulent, Weisenburg was not entitled to recover a verdict for abuse of process. We disagree for the reason that it is well-settled law that the gravamen of a cause of action for abuse of process lies in the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish. (*Meadows* v. *Bakersfield S. & L. Assn.,* 250 Cal.App.2d 749, 752 [59 Cal.Rptr. 34]; *Tranchina* v. *Arcinas,* 78 Cal.App.2d 522, 525 [178 P.2d 65].)

Professor Prosser, in discussing "Abuse of Process" at pages 856 and 857 of his authoritative Law of Torts (4th ed. 1971), makes the following cogent and pertinent comments:

"The action for malicious prosecution, whether it be permitted for criminal or civil proceedings, has failed to provide a remedy for a group of cases in which legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed. In such cases a tort action has been developed for what is called abuse of process. . . .

"Abuse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish. The

purpose for which the process is used, once it is issued, is the only thing of importance. . . . It is often said that proof of 'malice' is required; but it seems well settled that, except on the issue of punitive damages, this does not mean spite or ill will, or anything other than the improper purpose itself for which the process is used, . . ."

The jury was instructed as to what constitutes abuse of process in the following language: "An abuse of process is the use of legal process for a purpose other than that which it was designed to accomplish. The essential elements of abuse of process are an ulterior purpose and a wilful act in the use of the process not proper in the regular conduct of the proceeding. (Authorities: *Tellefsen* v. *Key System Transit Lines,* 198 C.A.2d 611; *Spellens* v. *Spellens,* [4]9 C.2d 210.)"

██ Ample evidence was presented to support the finding of an abuse of process in that appellants Yeaton and Molina conspired together to enter a judgment against Yeaton upon the notes which were executed by him and his wife in 1965 for the purpose of defeating or hindering Weisenburg's collection of his judgment against Yeaton by levy of execution under their Orange County judgment upon Yeaton's earnings. Furthermore, the testimony of Molina indicated that the proceeds from the levy of execution were deposited in Yeaton's checking account. Some other evidentiary facts supporting the special verdict finding the entry of this judgment to have been a sham and an abuse of process were: Yeaton testified that had it not been for the Weisenburg executions, the action against himself by Molina would not have been filed. Also, although Mrs. Yeaton was a co-maker of the notes to Stevens, the action was only filed against Yeaton because he was the only person whose earnings had been attached by Weisenburg. Yeaton stipulated to judgment prematurely because the largest note for $13,750 was not due for some nine months. Additionally, all of the appellants were closely related either by blood or marriage.

The fact that the trial judge declared the Orange County judgment null and void presents no problem since we construe the general verdict for Stevens as a finding by the jury that she did not knowingly participate in this conspiracy to enter a sham judgment, i.e., she did not actively participate in the abuse of process.

██ In summary, we conclude that there is no inconsistency between the special verdict finding an abuse of process in the entry of the judgment against Yeaton and the general verdict in favor of Weisen-

burg. We also find that there was sufficient evidence to support the finding that Yeaton and Molina misused the process of the Orange County Superior Court by obtaining the judgment and levying execution thereon for the sole purpose of defeating Weisenburg's legitimate efforts to collect his judgment.

## IV

 Finally, appellants contend that the punitive damages awarded to Weisenburg were excessive.

Generally, it has been said that there is no fixed standard by which punitive damages can be determined, and both the award and the amount thereof are left to the discretion of the jury, upon a consideration of all of the circumstances, and subject to the usual rule that the verdict must be supported by the evidence. A general limitation has been followed that ordinarily the punitive damages must be in some reasonable proportion to the actual damages suffered. The defendant's wealth is also a factor in determining the amount of an award of punitive damages, and evidence thereof is admissible although not a prerequisite to such an award. (See 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, §§ 867-869, pp. 3155-3157.)

 In considering a contention that excessive damages were awarded, an appellate court will not disturb the verdict unless the sum awarded is so disproportionate to any reasonable amount warranted by the evidence so as to shock the conscience and suggest passion and prejudice on the part of the jury. (*Seffert* v. *Los Angeles Transit Lines,* 56 Cal.2d 498, 507 [15 Cal.Rptr. 161, 364 P.2d 337]; *Horn* v. *Guaranty Chevrolet Motors,* 270 Cal.App.2d 477, 484-485 [75 Cal.Rptr. 871].) Although the amount of an award of exemplary damages may seem unreasonable to an appellate court based upon a review of the evidence, it will not substitute its conclusion for that of the trier of fact if it is supported by substantial evidence. (*Finney* v. *Lockhart,* 35 Cal.2d 161, 164 [217 P.2d 19]; *Fletcher* v. *Western National Life Ins. Co.,* 10 Cal.App.3d 376, 408 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].)

 We decline to second-guess the jury in this case as to its appraisal of the amount of exemplary damages required for sake of example and to punish Yeaton and Molina. The evidence was conflicting as to their financial ability to pay damages, and we cannot say as a matter of law that the punitive damages award did not bear a reasonable

relationship to actual damages. The jury as the trier of fact was in a much better position to determine this issue. Besides, in view of the obvious and flagrant misuse of the process of the Orange County Superior Court, the amount of punitive damages was not so shocking as to indicate that this jury was swayed by passion or prejudice.

The judgment is affirmed.

Tamura, J., and Gardner, P. J., concurred.