[No. D003053. Fourth Dist., Div. One. May 27, 1986.]

FRED H. CAMPBELL et al., Plaintiffs and Respondents, v. ROBERT McCLURE, Defendant and Appellant.

## COUNSEL

Dennis D. Burns for Defendant and Appellant.

Alden J. Fulkerson for Plaintiffs and Respondents.

## OPINION

**KREMER, P. J.**—Defendant Robert McClure, seller of a motor vehicle salvage and rebuilding business, appeals from a judgment in favor of plaintiff

buyers Fred H. and Terrel A. Campbell (Campbell) after a trial by the court. The judgment orders rescission of the transaction and damages for intentional fraud: compensatory damages of $181,291.13; exemplary damages of $99,393.19; and attorneys' and expert witness fees of $16,311.60 and $3,225, respectively. The judgment recites that the exemplary damages are for the sake of example and to punish McClure and would be reduced to $1,000 if McClure demonstrated his good faith and rehabilitation by paying the judgment in full by August 29, 1985.

McClure contends (1) the evidence was insufficient to support the trial court's finding of intentional fraud, (2) the evidence did not support the implied judicial finding of Campbell's justifiable reliance on McClure's representations, and (3) the punitive damages were not appropriate, were excessive and were improperly calculated.

We have concluded the evidence amply supports the findings of intentional fraud and reliance, requiring affirmance of the compensatory damages award and amounts for fees.

 Although it is true that the record does not reflect any evidence of McClure's wealth, an important consideration in determining the amount of punitive damages (*Devlin* v. *Kearny Mesa AMC/Jeep/Renault, Inc.* (1984) 155 Cal.App.3d 381, 390 [202 Cal.Rptr. 204]; *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 65 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878]), McClure's failure to raise the matter in the trial court by motion for new trial precludes our consideration of the issue.[1] (*Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 122 [135 Cal.Rptr. 802]; *Bate* v. *Jolin* (1929) 206 Cal. 504, 508 [274 P. 971]; *A & M Records, Inc.* v. *Heilman* (1977) 75 Cal.App.3d 554, 569, fn. 10 [142 Cal.Rptr. 390].) Accordingly, the entire judgment will be affirmed.

## FACTS

Campbell, with prior experience in the egg and poultry production business, was looking for a new business to purchase during 1981-1982. From a business broker Campbell received a brochure describing McClure's motor

---

[1]The law is clear that punitive damages are authorized in a case of fraud inducing entry into a contract, as this is; nor do we understand McClure to argue otherwise. (See *Walker* v. *Signal Companies, Inc.* (1978) 84 Cal.App.3d 982, 996 [149 Cal.Rptr. 119]; *Horn* v. *Guaranty Chevrolet Motors* (1969) 270 Cal.App.2d 477, 484 [75 Cal.Rptr. 871]; *Mahon* v. *Berg* (1968) 267 Cal.App.2d 588, 590 [73 Cal.Rptr. 356].) Accordingly, the legality of the award is not in issue, but only the amount, which must be first challenged in the trial court where it is most appropriately resolved.

vehicle salvage and rebuilding business. That brochure represented that during 1981 the business grossed $581,117 and netted $142,727. Campbell contacted McClure about April 1982 and entered upon negotiations to purchase the business.

Campbell hired a C.P.A. who reviewed McClure's business records including folders or "jackets" showing the history of each rebuilt and sold vehicle, worksheets, bank deposit books and checks, and the schedule C to McClure's 1981 income tax return. The accountant could not reconcile the records with the tax return nor could he establish the business's income, and he therefore told Campbell he could not advise him about the state of the business.

Campbell consulted an attorney, revealing these facts, and was advised not to purchase the business without a warranty of the accuracy of the representations in the brochure. The attorney drafted for Campbell the following warranty, which was incorporated into the escrow instructions for the sale of the business, and signed by both parties: "Seller warrants to the buyer herein that the complete brochure . . . is true and correct to the best of seller's knowledge and that seller understands that the brochure is a material inducement to the buyer to entering into this purchase."

At the trial, both Campbell and his attorney testified that Campbell would not have bought the business without McClure's signing the above warranty.

Between April and June 1982, Campbell and McClure met frequently to discuss the business operations and records. McClure told Campbell the records did not accurately reflect the cash flow or profits of the business because the business was a high-cash operation with much of the cash not being reported; the income was under-reported to the Internal Revenue Service; and McClure used a "two check system" in the sale of many reconditioned vehicles, one check to report tax in the records and one to go into his pocket undocumented.

Campbell bought the business through escrow and began operating it in August 1982. McClure from time to time assisted him with such matters as purchasing salvaged vehicles. However, the business, although operated in substantially the same manner as when owned by McClure, failed to yield a net income sufficient even to make the payments to McClure on two loans given for the sales price. (According to Campbell's notice of rescission, the adjusted net profits of the business when at the same production level as McClure had maintained were only about $36,000 per year. Campbell's payments on purchase money obligations to McClure totalled approximately $1,178.94 plus $2,021.06 monthly or $38,400 annually.)

On August 1, 1983, Campbell served a notice of rescission on McClure, which was rejected. Eventually, this lawsuit resulted seeking rescission, damages for fraud, and punitive damages.

An accountant-and-attorney witness testified as to his examination of McClure's business records which were shown to Campbell. He said the records were incomplete and inconsistent and the amount of profit per vehicle could not be determined from these records. Further, he analyzed bank books which had been shown to Campbell to document the assertion of gross sales receipts of $581,117 as per the sales brochure, and concluded that these books showed duplicative transfers between accounts and redeposit of overdrafts, casting in doubt the assertion that the total deposits for the period actually reflected the business's gross cash receipts. In fact, the expert believed the receipts were more likely $397,079. He said, "The records are incomplete, and they are assembled in such a manner as to misrepresent the true nature of the business." He further said in his opinion McClure could not have been in good faith ignorance of the discrepancy in the receipts figures, "not to this scale."

Also, the expert located many instances of dishonored checks, inconsistent with a net income in cash of $150,000 per year. (The brochure stated net income of $142,727.)

McClure's 1981 tax return showed a net loss of $8,469. After somewhat evasive responses to questions regarding the discrepancy between his tax return for 1981 and the sales brochure, McClure did admit on cross-examination that when he prepared his 1981 tax returns, he did not believe he made a net income of $142,000 in 1981.

After trial, the court found that Campbell relied upon the warranty of the sales brochure's accuracy as a material inducement to enter into the purchase; that after the sale Campbell operated the business substantially in the same manner as had McClure (with a much improved bookkeeping system); that after several months Campbell found the business generated no net profit, and gave notice of rescission; that the sales brochure grossly overstated the business receipts; that McClure made the "warranty" to induce Campbell to buy the business by deceiving him as to the size of the business profits, and that when he made the "warranty" McClure knew it was false and had no reasonable grounds to believe it true. As stated above, the court awarded compensatory and punitive damages in connection with the fraud in the inducement, and also granted rescission, ordering cancellation of the various obligations to McClure which Campbell assumed to buy the business.

## DISCUSSION

█ There is ample evidence to support findings of intentional fraud and justifiable reliance. Although McClure argues that Campbell had prior business experience, all the record shows is some earlier experience in the egg and poultry business, hardly sufficient to compel the trial court to assume a level of sufficient sophistication to penetrate the web of McClure's business records. (Campbell's attorney argues that the headlines for this case will read "Used Car Dealer takes chicken farmer for a ride.") █ Further, to borrow the apt phrasing of another court, "We recite our oft-repeated refrain: When a finding of fact is attacked on grounds that it is not supported by substantial evidence, the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the findings." (*In re Cheryl E.* (1984) 161 Cal.App.3d 587, 598 [207 Cal.Rptr. 728], citation omitted.)

█ Here the evidence shows that McClure signed escrow instructions which to his knowledge guaranteed the accuracy of his sales brochure, and McClure has admitted on the stand that when he filed his 1981 income tax return, at a time close to the time the business was sold, he knew the business did not make as much money as represented in the brochure. Further, expert testimony establishes the business records are misleading. Both Campbell and his attorney testified to the former's reliance on the accuracy of the sales brochure; knowing the problematic state of the business records, Campbell would not buy the business unless he at least were assured that it did indeed generate net profits in the neighborhood of $150,000 in 1981. McClure allowed Campbell to believe that representation, with no reasonable basis to conclude it was true. Accordingly, the trial court properly found the elements of fraud in the inducement of contract to be established here. (See *In re Cheryl E., supra,* 161 Cal.App.3d at pp. 599-600, and cases there cited, especially *Yellow Creek Logging Corp.* v. *Dare* (1963) 216 Cal.App.2d 50, 55 [30 Cal.Rptr. 629].)

Regarding the punitive damages amount, McClure says the amount was obtained by subtracting the amount of compensatory damages from the prayer for relief ($280,684.32 minus $181,291.13). █ It is true that this method is not the usual route by which a court fixes punitive damages; normally the court must consider the nature of defendant's acts, the size of the actual damages award, and the defendant's wealth. (*Devlin* v. *Kearny Mesa AMC/Jeep/Renault, Inc., supra,* 155 Cal.App.3d at p. 389.) █ However, as we have stated, the failure of McClure to move for new trial precludes our review of the amount of the award, a question depending upon resolution of conflicting factual evidence best resolved by the trier of

fact. (*Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.,* *supra,* 66 Cal.App.3d at p. 122.)

Judgment affirmed.

Work, J., and Lewis, J., concurred.