Filed 1/21/22  Marriage of Elbrolosy CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of ALISHA MARIE and AHMED ABDALLA ELBROLOSY. | |
| ALISHA MARIE ELBROLOSY, Appellant, v. AHMED ABDALLA ELBROLOSY, Respondent. | F082123 (Stanislaus Super. Ct. No. FL-18-00728) **OPINION** |

APPEAL from orders of the Superior Court of Stanislaus County.  Alan K. Cassidy, Judge.

Sarah Birmingham Law and Sarah J. Birmingham for Appellant.

Ahmed Abdalla Elbrolosy, in pro. per., for Respondent.

-ooOoo-

Appellant Alisha Elbrolosy (Alisha) asked the family court to allow her to move to Oklahoma with the two children she shares with her ex-husband, respondent Ahmed Abdalla Elbrolosy (Ahmed).  At the conclusion of a three-day court trial, the family court denied her request.  Alisha filed motions for reconsideration, new trial, and to vacate the family court's order, which the family court denied after it also reconsidered its decision

sua sponte. On appeal from the orders denying her posttrial motions,[1] Alisha contends the trial court erroneously denied her motions for reconsideration and new trial and did not consider the purported new evidence she offered when it reconsidered its decision sua sponte. Finding no prejudicial error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Alisha and Ahmed have two children together – now eight-year-old T.E. (daughter) and six-year-old Z.E. (son) (collectively the children). In July 2019, a permanent custody order was entered with the couple's judgment of dissolution that awarded them joint physical and legal custody of the children.

---

[1] The family court's order denying her move away request was made on August 7, 2020, and her posttrial motions were denied on October 27, 2020. Alisha filed a notice of appeal from the October 27, 2020 order on December 2, 2020. We note that orders denying motions for reconsideration and a new trial are not appealable orders but are reviewable on appeal from the original order. (Code Civ. Proc., § 1008, subd. (g) ["[a]n order denying a motion for reconsideration … is not separately appealable," but "if the order that was subject of a motion for reconsideration is appealable, the denial … is reviewable as part of an appeal from that order"]; *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 18 [while "[a]n order denying a motion for new trial is nonappealable," it "may be reviewed on appeal from the underlying judgment"] (*Walker*).)

The August 7, 2020 order denying Alisha's move away request is an appealable order. (See, e.g., *F.T. v. L.J.* (2011) 194 Cal.App.4th 1 [appeal from denial of move away order]; *Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1377–1378 [child custody order].) Moreover, the time to appeal from the August 7, 2020 order had not expired when Alisha filed the notice of appeal on December 2, 2020, as there is nothing in the record to indicate either the superior court clerk or Ahmed served notice of entry of the August 7, 2020 order on Alisha. (See Cal. Rules of Court, rule 8.104(a)(1).) While Alisha did not state she was appealing from the August 7, 2020 order, we may construe the notice of appeal to encompass that order where it is reasonably clear what she was trying to appeal from and there is no prejudice to respondent. (*Walker, supra,* 35 Cal.4th at p. 18.) Finding no prejudice to Ahmed, as he addressed the issues Alisha raises on appeal, we construe the appeal as being taken from the August 7, 2020 order. We further note that while the denial of a section 663 motion to vacate is appealable (*Ryan v. Rosenfeld* (2017) 3 Cal.5th 124, 127), Alisha does not raise any substantive issue on appeal concerning the denial of that motion.

In February 2020, Alisha filed a request to change the custody order to grant her sole legal and physical custody of the children and allow them to move with her to Oklahoma. Alisha asserted she needed to move to Oklahoma because she was no longer eligible to receive public services in Modesto and was unable to find work there, while all her extended family lived in Oklahoma. Ahmed filed an objection to Alisha's request. The matter was originally scheduled for trial on April 15, 2020, but due to the COVID-19 pandemic, the trial was continued several times to August 4, 2020. The trial took place over three days and concluded on August 7, 2020, with Ahmed representing himself and Alisha represented by counsel.

### The Trial on Alisha's Move Away Request

At trial, Alisha testified she moved to Oklahoma on April 1, 2020, because she lost her Section 8 housing, and she expected the trial would occur that month. Alisha further testified two of her older daughters were living with her in McAlester, Oklahoma – 17-year-old H. and 10-year-old K.[2] They lived in a four-bedroom, two-bath home, and if the children moved there, they would have their own bedrooms. Alisha's mother, grandmother, cousins, aunts, and uncles all lived in McAlester, about two and a half minutes from Alisha's house.

Alisha testified H. was very upset to be separated from the children and she "had a couple of breakdowns." While H. had contact with the children, it had been very hard for her. H. would go into the children's rooms, which were set up for them, lay on their beds and cry. Alisha claimed H. always had a good relationship with her siblings.

Alisha testified about Ahmed's arrests for domestic violence, his failure to coparent, and her concerns about the children's health and welfare at his home due to unsanitary conditions, the children's health conditions, and the failure to get their son to

---

[2] Alisha has sole custody of H. and shared custody of K. with K.'s father, who lives in Modesto.

school on time.  Ahmed admitted being arrested twice for domestic violence against Alisha, but there was never a trial; in the past five years, police came to their home several other times because he and Alisha were physically fighting.

Ahmed produced an exchange of text messages between himself and Alisha from November 9, 2019, when Alisha lived in Stanislaus County and had custody of the children and H.[3]  In the text messages, Alisha asked Ahmed for support because H. was threatening her; Alisha stated H. told her to watch her back and she should not sleep. Alisha texted Ahmed that H. yelled at her and pushed her hard twice, and a few months before, H. threw Alisha's medicines away and told Alisha she wanted her to die.  Alisha also texted that H. was standing in Alisha's bedroom doorway, staring at her with clenched fists, and H. yelled that Alisha should hit her so Alisha would go to jail.  During this, Alisha laid on her bed with the lights off.  Alisha stated H. threatened to kill her four times that night, and H. needed to either go to a mental institution or be arrested.

Ahmed questioned Alisha about this incident.  She testified that H. was going through a suicidal moment, and she contacted Ahmed for help because she needed a babysitter for the younger children.  Alisha said H. threatened to kill her if she sought Ahmed's help.  While Alisha twice sought Ahmed's help in dealing with H., she claimed H. was doing better.

Ahmed also testified about the incident.  He was concerned about H. being around the children because she "goes through stages, especially when she's not taking her treatment where she exhibits very concerning behavior and language in front of the children that would harm them."

During a break in testimony, when the family court was reviewing the exhibits offered by both parties, the family court asked Alisha's attorney to review the text

---

[3] When Ahmed produced the text messages, Alisha's attorney stated she had briefly scanned them, and Alisha confirmed the messages were communications between herself and Ahmed.

messages, and to take note of some of the messages the court had marked with Post-its. After Ahmed confirmed he was asking that the text messages be received into evidence, the family court stated they were received "[w]ithout objection."

At the family court's invitation, Alisha's attorney recalled Alisha to testify about the text messages. Alisha explained she sent Ahmed the text messages because H. was cutting herself and had a "really bad attitude." Alisha claimed H. was better once Alisha "eliminated" a boy H. had been seeing "out of her life"; after H. attended three counseling sessions and Alisha changed her school schedule, H. "was fine." H. decided she did not need further counseling and stopped going; her counselor agreed with the decision but told her to return if she "started misbehaving." Alisha admitted being in fear for her life when H. threatened to kill her. She protected the younger children by having them sleep in her bed while she stayed awake.

Alisha's attorney asked her what steps she had taken "to make sure that your children are not at risk of harm if they're around [H.]." Alisha responded: "[H.'s] attitude has drastically changed and she became the old [H.] that she used to be before she met this guy, which is a caring, loving person. She wouldn't hurt anybody."

In his closing argument, Ahmed asserted, among other things, H.'s problems were a continuing issue for her, and Alisha told him she was incapable of controlling her alone. Rather than make a closing argument, Alisha's attorney submitted the matter.

After a recess, the family court announced its decision from the bench. After finding the requested move was not made in bad faith, the juvenile court considered whether the move would be in the children's best interests. The family court explained it was not happy with either choice being offered, as the evidence suggested Ahmed did not encourage the relationship between Alisha and the children, but on the other hand, Alisha proposed moving the children into a home with H., who had a "documented history of dangerous behavior" as shown by the text messages and Alisha's admission she needed to stay awake all night to ensure H. would not harm the children. While Alisha testified

5.

that H. "was going through a brief period of instability," the family court did not draw that conclusion and instead found there was insufficient evidence to conclude "[H.] is in a situation where she might not quite likely threaten harm to the children." Accordingly, the family court stated it could not find it would be in the children's best interest to move to Oklahoma and denied Alisha's request.

The family court stated a custody mediation needed to be set. After the parties agreed to a date, Alisha's attorney stated her client "wished to make a statement with regards to [H.'s] current living situation if the Court would allow her to make such a statement." The family court declined and continued the matter to August 27, 2020, for further custody mediation. There is nothing in the record to show the August 7, 2020 minute order that reflected the family court's ruling (the August 7 order) was served on the parties.

On August 27, 2020, following the custody hearing, the family court filed an order which granted the parents joint legal custody and father sole physical custody of the children, with mother having custody of the children during the winter and summer school breaks.

### The Posttrial Motions

On September 2, 2020, Alisha filed a notice of intention to vacate and enter a different judgment. Alisha stated she was filing a request for an order "seeking a motion for reconsideration, motion for new [trial], motion to vacate and enter different judgment and/or motion to set aside" pursuant to Code of Civil Procedure sections 1008, 663, 656, and 657,[4] and asked the court to grant her request to allow the children to relocate to Oklahoma. Alisha filed the request for the order two days later, which stated she was

---

[4] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

6.

bringing motions for new trial, reconsideration, to vacate and enter a different judgment, or alternatively to set aside the judgment.

In her attached declaration, Alisha stated the trial court issued its oral decision on August 7, 2020, and she did not receive the minute order from the trial court until August 24, 2020. Alisha stated when the trial commenced, she testified about her residence in Oklahoma and "made reference to" H., and the family court relied heavily on later testimony regarding various incidents concerning H. in deciding the children were at risk due to H.'s behavior. Alisha asserted H.'s maternal grandmother moved H. to maternal grandmother's residence in McAlester, Oklahoma, on July 17, 2020, and "all of [H.'s] belongings were effectively moved from" Alisha's residence on July 31, 2020, which was the day Alisha started traveling to California for trial. Alisha declared that when she testified at trial, she had not returned to her residence to verify H.'s belongings had been fully moved out, and she did not have documentation to show H. did not live with her. While she asked to clarify H.'s living situation after the family court issued its decision, her request was denied. Alisha stated she subsequently obtained a declaration from her mother, as well as copies of identification cards and other information demonstrating H.'s "official residence" was different than hers, which she would file in advance of the hearing.[5]

Based on this, Alisha asked the family court to reconsider the matter, as it would have rendered a different decision had it been aware H. did not live with her. As to the alternate motion for a new trial, Alisha asserted she was prevented from having a fair trial when the family court denied her attorney's request to clarify H.'s living situation after it entered its oral decision. Alisha claimed she "was unable to fully testify to the court that [H.] had moved out" because she had not been back to her residence since July 31, 2020,

---

[5] It does not appear that Alisha ever filed this documentary evidence as it is not in the clerk's transcript.

and asked for a new trial so the court could consider all the evidence related to H.'s living circumstances and the nature and extent of any contact H. would have with the children. Alisha also asked the court to vacate its oral decision, as it was not consistent with the "actual facts" that H. began living with maternal grandmother on July 17, 2020, and while she understood the family court's concerns regarding H., H. did not live with her. Alisha also asked the court to set aside the decision because she did not understand the issues concerning whether H. lived with her when she testified.

In her memorandum of points and authorities, which was filed with the notice of intention, Alisha asked the family court to reconsider her request for the children to relocate to Oklahoma under section 1008 since H. did not live with her. On the motion for a new trial, Alisha asked the court to reexamine the issue of H.'s residence under section 657, subdivisions (1), (3), and (4). Specifically, Alisha argued: (1) she was deprived of a fair trial when the family court denied her attorney's request to clarify H.'s residence; (2) she was unduly prejudiced because she was not provided "the voluminous series of text messages" before trial so she could prepare; and (3) she was unable to provide evidence regarding H.'s location and residence, including securing a declaration from maternal grandmother and documentation to show H. did not live with her. Finally, Alisha argued the family court's decision should be set aside and vacated under section 663 because that decision was not supported by the fact H. did not reside with her.

Ahmed filed a declaration in opposition to Alisha's motions on September 17, 2020. Ahmed stated he was worried more than ever before for the children to live with Alisha or be near H. because the danger H. posed still existed. He asserted it did not mean anything that H. lived with maternal grandmother because maternal grandmother's house was near Alisha's, and nothing prevented H. from being in Alisha's daily life. Ahmed asserted it was not true that Alisha and her attorney did not have time to defend against the text messages, as the family court made it clear he could present evidence if he emailed Alisha's attorney at least a full day before the court session, which he did, and

8.

Alisha did not object to the evidence when it was presented. Finally, he asserted Alisha did not have new evidence to justify a new trial.

The family court continued the hearing from October 20 to October 27, 2020, on its own motion, so it could more fully review the trial transcripts and exhibits. At the continued hearing, the family court stated it had considered the request for order and Ahmed's declaration, and asked Alisha's attorney and Ahmed if they had anything else that they wished to offer, but neither had anything to add. The family court then addressed Alisha's requests. The family court denied the motion for reconsideration under section 1008 because: (1) it did not have jurisdiction to hear the motion as the request for order was not brought and served within 10 court days following receipt of its written statement of decision, and (2) in any event, there were no new or different facts, as Alisha conceded she discovered H.'s move out of her residence before the close of evidence on August 7, and even before the trial began on August 4. With respect to the motion for a new trial under sections 656 and 657, the family court found such a motion was not available with respect to a child custody order because section 657 refers only to "verdicts, decrees or judgments," and the child custody order it was asked to make was none of those things. Similarly, the family court found there was not "the requisite nature of a decision" pursuant to section 663.

Finally, the family court stated it had reconsidered its decision sua sponte after reading the three days of proceedings and reviewing the exhibits offered. The family court explained its decision was based significantly on evidence H. engaged in conduct that threatened Alisha's life and, in Alisha's words, threatened the children's lives, and determined it could not find it would be in the children's best interest to return to a residence where H. was residing.

The family court reviewed Alisha's testimony concerning H.'s residence. On the first day of trial, Alisha was asked about H.'s residence when she was asked, " 'Do you have any other children that are living with you in Oklahoma presently?' " and she

responded, " 'Yes,' " and identified the other children as H. and K. Alisha described the residence as having four bedrooms and that the children would have their own rooms there upon their return. When Alisha was asked about H.'s activities within the residence, specifically how she responded to the children's absence, Alisha testified " '[H.] went into the rooms designated for the subject children would lay on the bed and cry,' " and she had the opportunity to observe H. on video calls with the children since moving to Oklahoma. Later that first day of trial, Alisha identified her address as being on Ninth Street in McAlester, Oklahoma, and that she, H., and K. lived there.

The family court noted on the second day of trial, Ahmed testified at length about H.'s mental health issues and acting out and his concern for the children being around her. On the third day of trial, the family court raised its own concerns based on the text exchanges between Alisha and Ahmed, which noted H. had been acting out and threatening the lives of Alisha and the children. Alisha was further examined about that concern and was asked, " 'What steps have you taken, if any, to make sure that your children are not at risk of harm around [H.]?' " Alisha responded, " '[H.'s] attitude has drastically changed and she became the old [H.] that she used to be before she met this guy, which is a caring loving person. She wouldn't hurt anybody.' "

The family court explained that "a different offer of proof" was being made that H. was no longer residing with Alisha, but "[i]f that was, in fact, the case, [Alisha] had that information available to her during all three days of the hearing on this matter and that was not offered." The family court declined to "inter-correct that information now after a decision has been rendered," and therefore denied the request for relief. After the decision was issued, Alisha's attorney stated there was a dispute regarding the date of receipt of the family court's written statement of decision in relation to its ruling on the first motion. The family court responded, "[H]ence the reason both sides got to argue that issue."

10.

The minute order of the hearing further explains the family court's rulings. On the motion for reconsideration, the family court found it lacked authority to entertain the motion because it was not timely filed. The family court explained Alisha had 10 days from August 24, 2020, the day Alisha alleged receipt of the family court's oral denial of her move-away request, to file and serve the motion, which fell on September 3, 2020, but she did not file the request for order until September 4, 2020, and did not serve the request on Ahmed until September 11, 2020. Moreover, even if the motion were timely, Alisha failed to supply the requisite affidavit specifying the new or different facts, circumstances or law, as she conceded she discovered H. moved out of her home prior to the close of evidence on August 7 and failed to provide a satisfactory explanation why she failed to produce the evidence earlier or exercise reasonable diligence in obtaining the evidence.

On the motion for new trial, the family court noted there was a split of authority on the availability of such a motion following a postjudgment request for order or show cause proceedings, but it believed the better reasoned view is that such motions are not available because section 657's express language refers only to judgments, decrees, or verdicts, and thus the motion is inapplicable "to the inherently modifiable post-judgment proceedings in family law cases involving support or custody." Accordingly, the family court did not consider Alisha's asserted legal and factual bases for the motion, which also applied to the section 663 motion to vacate.

Finally, the family court explained it reconsidered its decision pursuant to Alisha's request for reconsideration sua sponte and following reconsideration, including review of the transcripts and exhibits, it confirmed "it's previous finding that the behavior of [Alisha]'s older child threatened the safety of the subject children, and that the Court did not find it in the subject children's best interests to permit them to move into the same family home as their older half sibling." Accordingly, the family court denied Alisha's requests for relief.

11.

## DISCUSSION

### *The Motion for Reconsideration and the Court's Sua Sponte Reconsideration*

Alisha contends the family court erred in denying her motion for reconsideration of the August 7 order. Specifically, she argues while the family court found her request for order was untimely because it was not brought and served within 10 days following receipt of the written decision, she was never served with written notice of entry of the August 7 order, which according to section 1008 is required to start the 10-day period running. (§ 1008, subd. (a) [a party may bring a motion for reconsideration "within 10 days after service upon the party of written notice of entry of order and based upon new or different fact, circumstances, or law"].) She further argues her declaration explained why she was unable to produce the evidence that H. had moved from her home, namely that she was unable to verify H. had fully removed her belongings from her home because she left Oklahoma to attend the trial before that occurred.

We agree with Alisha that the motion for reconsideration was timely because she was never served with notice of entry of the August 7 order. The family court did not err in denying the motion, however, because the evidence Alisha wanted the court to consider was not new evidence, and her declaration did not sufficiently explain why she failed to produce the evidence earlier. Under section 1008, "a party seeking reconsideration of a prior ruling upon an alleged different set of facts must 'provide both newly discovered evidence and an explanation for the failure to have produced such evidence earlier. [Citation.]' [Citation.]" (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1168.) "A trial court's ruling on a motion for reconsideration is reviewed under the abuse of discretion standard. [Citation.]" (*New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212.)

In her declaration in support of the motion for reconsideration, Alisha stated maternal grandmother moved H. from Alisha's home to maternal grandmother's home on July 17, 2020, but the move was not completed until July 31, 2020, when all of H.'s

12.

belongings were removed from Alisha's home. Alisha asserted that when she testified, she had not verified the move had been completed as she began traveling to California for trial on July 31, 2020, and she did not have supporting documentation to show H. no longer lived with her.

Alisha's declaration shows the evidence of H.'s move from her home was not new, but rather was available at the time of trial. "The burden under section 1008 is comparable to that of a party seeking a new trial on the ground of newly discovered evidence: the information must be such that the moving party could not, with reasonable diligence, have discovered or produced it at the trial. [Citation.]" (*New York Times Co., supra,* 135 Cal.App.4th at pp. 212–213.) As the family court found, Alisha essentially conceded she discovered the allegedly new or different fact of H.'s move from her home prior to the close of evidence on April 7, 2020. Alisha certainly could have testified, when asked whether any other children were living with her, that H. was moving into maternal grandmother's home. "[F]acts of which the party seeking reconsideration was aware at the time of the original ruling are not 'new or different.' [Citation.]" (*In re Marriage of Herr* (2009) 174 Cal.App.4th 1463, 1468.)

Moreover, the trial court reasonably found Alisha did not provide a satisfactory explanation for failing to produce the evidence at trial. Section 1008 requires a party seeking reconsideration "to show diligence with a satisfactory explanation for not having presented the new or different information earlier. [Citations.]" (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 839.) While Alisha claimed she could not produce the evidence earlier because she could not personally verify H. had moved all her belongings out of her home, she certainly knew H. was moving and could have testified to that fact. Moreover, Alisha fails to explain why she could not have verified H.'s move in ways other than traveling to Oklahoma and verifying the move herself.

Despite the deficiencies in Alisha's motion for reconsideration, the family court reconsidered the August 7 order sua sponte and confirmed its previous finding that H.'s behavior threatened the children's safety, and it was not in their best interests to permit them to move into the same home with her. Alisha notes the family court's reconsideration was proper, citing *Case v. Lazben Financial Co.* (2002) 99 Cal.App.4th 172, 175, which holds a trial court can sua sponte reconsider its own interim orders irrespective of section 1008, but asserts the trial court failed to reconsider its ruling in light of the new evidence that H. was not living in her home.

Trial courts, however, have no power to grant reconsideration based "on evidence that could and should have been, but was not, presented to the court in connection with the original motion." (*In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301, 1314.) Instead, to "grant reconsideration on its own motion, the trial court must conclude that its earlier ruling was wrong, and change that ruling *based on the evidence originally submitted*." (*Ibid.*) A trial court's grant of reconsideration to consider new evidence would be tantamount to granting a new trial, which the court has no inherent power to grant since the right to a new trial is purely statutory. (*Marriage of Herr, supra,* 174 Cal.App.4th at pp. 1470–1471.) Thus, the trial court did not err when it reconsidered the August 7 order based on the evidence submitted at trial.

In sum, the trial court did not abuse its discretion in denying the motion for reconsideration on the grounds the evidence was not new, and Alisha failed to show diligence with a satisfactory explanation for not presenting the evidence earlier. Moreover, the trial court did not err in reconsidering its decision based on the evidence presented at trial.

### The Motion for New Trial

Alisha contends the family court erred in denying her motion for a new trial on the ground the motion is not available for postjudgment trials to modify a custody and visitation order. She asserts none of the authorities the family court cited in its order

14.

support such a conclusion, therefore the trial court should have decided the merits of her request.

In deciding that Alisha could not bring a new trial motion to challenge the August 7 order, the family court relied on a secondary treatise, which states court-ordered child custody modifications may be challenged by the same procedures available to challenge a pendente lite family law order, including a section 473, subdivision (b) set aside motion, a section 1008 motion for reconsideration, a set aside motion pursuant to Family Code section 3690 et seq., or an appeal. (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2021) ¶ 17:418, pp. 17-137–17-138.) The treatise refers to a section in a prior chapter that discusses the options available to a party aggrieved by the entry of an order on a motion or order to show cause. (*Ibid.*) There, the treatise explains a split of authority exists on whether orders on motions or orders to show cause are outside the scope of motions for new trial under section 657 and motions to vacate under section 663. (Hogoboom & King, *supra*, ¶ 5:530, p. 5-253.) The treatise further explains that courts rejecting "this form of relief interpret both statutes as limited to 'judgments,' 'decrees' or 'verdicts' and thus inapplicable to 'orders' on motions/OSCs," citing *Mann v. Superior Court* (1942) 53 Cal.App.2d 272, 284–285, and *Marriage of Wickander* (1986) 187 Cal.App.3d 1364, 1367, while "other cases construe 'trial' broadly to encompass pre- and post-trial hearings, upholding the propriety of a motion for new trial to challenge an *appealable* order issued on a motion." (Hogoboom & King, *supra*, ¶¶ 5:531 to 5:532, p. 5-253.)

The family court relied on this discussion, and the cited cases, to find the view rejecting the remedy of a new trial motion was "the better reasoned view." Alisha argues the cited cases do not bar a new trial motion here because they do not address postjudgment custody matters and asserts there is no legal authority preventing her from bringing a new trial motion.

We need not decide whether a new trial motion is available to challenge a postjudgment request to modify a custody order because even if Alisha is correct, and the trial court erred in failing to decide the merits of her new trial motion, the erroneous denial does not, standing alone, compel reversal. Rather, Alisha must also demonstrate prejudice from the erroneous denial. (*Sherman v. Kinetic Concepts, Inc.* (1998) 67 Cal.App.4th 1152, 1160–1161.) Alisha, however, does not address the issue of prejudice.

The new trial motion was brought on three grounds, but none of them warrant a new trial. Alisha contended she was entitled to a new trial under section 657, subdivisions (1) and (4)[6] because the family court refused to allow her to clarify the issue of H.'s residence, which was newly discovered evidence, after the trial court issued its ruling. A motion for new trial based on grounds of newly discovered evidence requires that the evidence be newly discovered and with the use of "reasonable diligence" could not have been discovered and produced at trial. (§ 657, subd. (4).) But we have already upheld the family court's findings on the motion for reconsideration that the evidence was not newly discovered and with reasonable diligence could have been discovered and produced at trial. Accordingly, Alisha cannot show prejudice on these grounds. (E.g., *Weisenburg v. Molina* (1976) 58 Cal.App.3d 478, 486 [finding no prejudice from erroneous denial of new trial motion based on lack of jurisdiction where appellate court considered merits of motion through appellant's contentions on appeal].)

Alisha also contended she was entitled to a new trial based on accident or surprise under section 657, subdivision (3) because she was not provided with the text messages in advance of trial. "[A] party's right to a new trial upon the ground of surprise"

---

[6] Section 657, subdivision (1) provides that a new trial may be granted based on "[i]rregularity in the proceedings of the court … or any order of the court or abuse of discretion by which either party was prevented from having a fair trial."

Section 657, subdivision (4) provides a new trial may be granted based on "[n]ewly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial."

generally is "waived if the alleged surprise is not called to the court's attention by a motion for a continuance or other relief. [Citations.]" (*Noble v. Tweedy* (1949) 90 Cal.App.2d 738, 742.) Alisha, however, did not request a continuance or other relief when Ahmed offered the text messages as evidence at trial. Instead, the record shows the text messages were admitted into evidence without objection. Therefore, Alisha forfeited her right to seek a new trial on this ground. Since Alisha has not demonstrated prejudice from the denial of her new trial motion, we must affirm.

## DISPOSITION

The trial court's orders are affirmed. Costs on appeal are awarded to respondent.


POOCHIGIAN, J.

WE CONCUR:


LEVY, ACTING P. J.


MEEHAN, J.